FILED

**January 13, 1999**

**Cecil Crowson, Jr.
Appellate Court
Clerk**

R&E PROPERTIES,                      ) HAMILTON CIRCUIT COURT
                                     ) C.A. No. 03A01-9804-CV-00133
                                     )
  Plaintiff-Counter-Defendant-      )
    Appellee                        )
                                     )
                                     ) HON. ROBERT M. SUMMITT
vs.                                  ) JUDGE
                                     )
                                     )
RON JONES and SANDY JONES,           )
                                     )
                                     )
  Defendants-Counter-Plaintiffs-    ) AFFIRMED AND REMANDED
    Appellants                      )


LYNNE DECHMAN, Chattanooga, for Appellants.


WILLIAM WEEKS, Wagner, Nelson & Weeks, Chattanooga, for Appellees.


SARAH A. HIESTAND, Nashville, for State of Tennessee.


O P I N I O N


McMurray, J.


    This is a detainer action.  R&E Properties (R&E), the
appellee, is a partnership that owns Woodland Mobile Home Park in
Hamilton County, Tennessee.  Ron and Sandy Jones (the Joneses), the
appellants, and R&E entered into a six-month lease agreement for
rental of a mobile home lot.  During the period of the lease

agreement, problems arose regarding the Joneses' tenancy. Before the expiration of the lease, R&E notified the Joneses that their lease would not be extended. Sandy Jones apparently persuaded R&E to let her family continue their tenancy until they could obtain the money to move. R&E consented to this arrangement, but when the Joneses still did not move, R&E notified the Jones in June 1997 that their tenancy would be terminated effective August 1, 1997. The Joneses did not move by August 1, 1997, and R&E filed a detainer action in Hamilton County General Sessions Court. R&E was awarded possession of the premises. The Joneses appealed de novo to the Hamilton County Circuit Court and filed a counterclaim against R&E, alleging in essence the same issues presented in this Court on appeal. After a trial in February 1998, the trial court ruled in favor of R&E. The Joneses now appeal the judgment of the trial court. We affirm the judgment of the trial court in its entirety.

The Joneses present four issues for our consideration:

1. Whether R&E violated Tennessee Code Annotation § 66-28-512(b) by not giving a 30-day notice when it accepted rent without reservation and with knowledge of the Joneses' default, and if R&E by such acceptance condoned the breach and thereby waived their rights and became estopped from terminating the rental agreement.

2. Whether R&E violated the Fair Housing Act, as amended, 42 U.S.C. § 3601 and the Tennessee Human Rights Act, Tennessee Code Annotated § 4-21-301 by the willful, wanton, and malicious creation of a

hostile environment against the Joneses and their three children, without cause, by discriminating against them in the terms, conditions, or privileges of the rental of the lot, and in the provision of services of the facility in connection therewith, because of their familial status.

3. Whether Tennessee Code Annotated §§ 29-18-128 through -130 violates the due process and equal protection clauses of the Fifth and Fourteenth Amendments of the United States Constitution by denying meaningful access to the Tennessee courts.

4. Whether Tennessee Code Annotated §§ 29-18-128 through -130 violates the Open Court and Due Process provisions of Article I, Section 17 of the Tennessee Constitution and the Pauper's Oath of Tennessee Code Annotated § 20-12-127(a) by denying meaningful access to the Tennessee courts.

On October 1, 1996, R&E entered into a six-month lease agreement with the Joneses for rental of a mobile home lot in the Woodland Mobile Home Park in Hamilton County. From the outset, R&E experienced problems with the Joneses' tenancy. R&E sent several letters to the Joneses and requested that they remove a vehicle parked in the yard instead of the driveway, remove toys and boxes strewn over their yard, perform the required underpinning of their mobile home, and properly dispose of their garbage instead of placing it in their truck. On March 10, 1997, R&E sent a notice to the Joneses that their lease, which was to expire on April 1, 1997, would not be extended and that they needed to move. According to Paula Ellis, one of the partners who owns the mobile home park, Sandy Jones asked that she and her family be allowed to stay until they could obtain the money to relocate. Ms. Ellis agreed to this

3

arrangement. Finally, when the move did not occur, R&E sent a notice on June 26, 1997 informing the Joneses that their tenancy would be terminated effective August 1, 1997. On August 5, 1997, R&E filed an unlawful detainer warrant, but it could not be served on the Joneses. R&E then filed an alias unlawful detainer warrant on September 3, 1997, and this warrant was served on the Joneses. As a result of the detainer action in general sessions court, R&E was awarded possession of the premises, and the Joneses were required to move. The Joneses appealed to circuit court, and following a trial in February 1998, the court ruled in favor of R&E. The Joneses now appeal from that judgment.

In their first issue, Joneses argue that R&E violated Tennessee Code Annotated § 66-28-512(b) by not giving a 30-day notice when it accepted rent without reservation, and therefore, is estopped from terminating the rental agreement. Woodland Mobile Home Park where the Joneses resided is located in Hamilton County, which is subject to the Uniform Residential Landlord and Tenant Act under Tennessee Code Annotated § 66-28-101. The Joneses maintain that their six-month lease ended on April 1, 1997, but R&E accepted rent for April 1997 through June 1997 without reservation. Furthermore, after the written notice dated June 26, 1997, R&E accepted rent without reservation for July, August, and September 1997. They contend that under Tennessee Code Annotated § 66-28-202(a) they had a month-to-month tenancy because R&E accepted rent

4

without reservation and because there was no written agreement between them and R&E.

The Joneses assert that they did not receive a 30-day notice under Tennessee Code Annotated § 66-28-512(b)(1993), which states that "[t]he landlord or the tenant may terminate a month-to-month tenancy by a written notice given to the other at least thirty (30) days prior to the periodic rental date specified in the notice." The Joneses contend that they did not receive notice that they were being evicted and that acceptance of rent was not recognized as a waiver by R&E until they received a letter from R&E dated September 9, 1997.

R&E asserts that the Joneses received adequate notice of the termination of their month-to-month tenancy. R&E contends that on March 10, 1997, notice was sent to the Joneses that their lease would not be extended and that they should move. After the expiration of the lease, Sandy Jones notified Paula Ellis that she and her family would move, but that they needed time to obtain the money to relocate. However, when the Joneses did not move, R&E sent another termination notice on June 26, 1997, that stated that their tenancy would be terminated effective on August 1, 1997. R&E filed a detainer action on August 5, 1997 and accepted rent from the Joneses for August and September 1997. It maintains, however, that it did not consent to an extension of the Joneses' month-to-

5

month tenancy after the filing of the detainer warrant on August 5, 1997.

In addressing this issue, we note that the Joneses admit that they had a month-to-month tenancy after the expiration of their lease on April 1, 1997.  According to the record, Sandy Jones asked that she and her family be permitted to stay at Woodland Park until they could obtain the money to move. Paula Ellis consented to this arrangement and accepted rent for the months of April, May, and June.  However, when it became apparent that the Joneses did not plan to move, R&E sent another notice on June 26, 1997, informing the Joneses that their tenancy would be terminated effective August 1, 1997.

We find the Joneses' argument that they did not receive adequate notice and were unaware of what was occurring until September 9, 1997 unpersuasive.  The notice of June 26, 1997, gave the Joneses well over the required 30-day notice that their tenancy was to be terminated.  Furthermore, the record reveals that the June 26th notice, as well as several other pieces of correspondence, was mailed to the Joneses by certified mail and was received by Sandy Jones, whose signature appears on the receipt for the June 26th notice.  The fact that R&E accepted rent from the Joneses during this time does not mean that R&E waived its right to terminate the Joneses' month-to-month tenancy.  The Joneses

6

continued to occupy the premises for July, August, and September, and therefore, owed the rent to R&E for their possession of the premises. As R&E notes in its brief, and the record reveals, R&E did not consent to the Joneses continued tenancy past August 1, 1997, but in fact, R&E filed an unlawful detainer action on August 5, 1997. When that detainer warrant could not be served on the Joneses, R&E persisted until a second detainer warrant was served in September 1997. We find nothing in the record to indicate that the Joneses did not receive adequate notice of the termination of their tenancy or that R&E consented to an extension of the Joneses' month-to-month tenancy. Therefore, this issue is without merit.

In their second issue, the Joneses argue that R&E violated the Fair Housing Act under 42 U.S.C. § 3601 and the Tennessee Human Rights Act under Tennessee Code Annotated § 4-21-301. They assert that R&E created a hostile environment against them and their three children and discriminated against them in the rental of the mobile home lot because of their familial status.

The Joneses contend that R&E did not give them a reason for their family's eviction. They argue that R&E sent two notices to residents at the mobile home park that created "a hostile environment against families" and therefore, violated the Federal Fair Housing Act and the Tennessee Human Rights Act. They further assert that "R&E Properties rented to a family but made rules and

7

regulations that discourage rental by families and creates a hostile, unreasonable and punitive environment against families who rent from them." Specifically, the Joneses note that the notices sent to residents banned bicycles in the park and required adult supervision for children whenever they are outside. If these rules are not followed, the family will be evicted. The Joneses contend that such requirements constitute a "hostile environment."

R&E argues that the two notices the Joneses refer to do not constitute discrimination. It maintains that the notice dated March 10, 1997 was issued for the safety of the children in the park after several incidents involving children and that violating these rules had nothing to do with the Joneses being evicted from the park. Also, the notice dated September 3, 1997 was sent to residents well after the Joneses had received notice on June 26, 1997 that their tenancy had been terminated. Therefore, these notices had nothing to do with the Joneses' eviction. Moreover, R&E contends that there is no "pattern of discrimination against any families," because approximately three-fourths of the residents have children.

The appellants appear to base their charge of discrimination on two notices that were sent to residents at Woodland Mobile Home Park. The first notice, regarding parental responsibilities, was dated March 10, 1997, and was sent by Paula Ellis:

8

> Parents please keep in mind that the following
> are park rules and anyone who chooses to ignore
> these rules will be evicted from the park.  No
> exceptions!
>
> 1. All children are to play in their own yards.
>
> 2. No bicycles are to be ridden on the streets.
>
> 3. All children walking from one lot to another
> must be accompanied by an adult.
>
> 4. No child should be allowed to hang around
> the bus stop.
>
> 5. No pellet or BB guns are allowed.
>
> Parents you are responsible for your child's
> whereabouts at all times.
>
> ....

The second notice, titled "Amendment to the Park Rules & Regulations" and dated September 3, 1997, notifies all residents about new rules within the mobile home park.  Specifically, bicycles would no longer be allowed on the grounds of the park, and children should be accompanied by an adult when outside, not left to roam through the park.

First, we address the two notices on which the Joneses appear to base their discrimination argument.  The first notice was sent on March 10, 1997, the day that the Joneses received notice that their lease, which expired April 1, 1997, would not be extended. The second notice was sent on September 3, 1997, well after the

9

June 26th notice to the Joneses that their tenancy would not be renewed. Furthermore, the well-documented record in this case provides no less than four letters from R&E to the Joneses about their violation of park rules before the March 10th notice was sent. These letters to the Joneses addressed such issues as their failure to underpin their trailer, their failure to remove garbage from their lot, their failure to park vehicles in the driveway instead of their yard, and their failure to remove a car trailer from the lot.

Second, the evidence presented at trial supports R&E's contention that safety concerns motivated the sending of the notices to residents. Paula Ellis, one of the partners who owns the mobile home park, testified that she sent the first notice for the safety of the children in the park after several incidents involving children. She stated that one woman's car had been scratched by a bicycle, and a man stated that he had almost hit a child on a bicycle who darted in front of him. Ms. Ellis also testified that on several occasions, she had tried to turn into the park and could not because of children on bicycles lingering at the entrance of the park.

Third, the record indicates that R&E did not discriminate against individuals with children. Ms. Ellis testified that approximately three-fourths of the residents had children. She

further testified that of approximately sixty evictions, only two evictions were based on a violation of rules and regulations.

Based on the foregoing, we conclude that the Joneses were not discriminated against based on familial status.  Therefore, this issue is without merit.

In their third issue, the Joneses argue that Tennessee Code Annotated §§ 29-18-128 through -130, which pertain to bond requirements for review of a detainer action, violate the Equal Protection and the Due Process clauses of the United States Constitution because they limit certain individuals' right to appeal.  Although the Joneses acknowledge that the Tennessee Supreme Court has concluded that these statutes do not impose an unreasonable burden on the right to appeal, they argue that the Court should have applied a strict scrutiny test instead of a rational basis test in reaching its decision.  They contend that these statutes and government actions are subject to the strict scrutiny test because they "purposefully discriminate against a suspect class and infringe upon a fundamental right."  Although they recognize that poverty is not a suspect class, they argue that "where the exercise of fundamental rights is exclusively linked to wealth, strict scrutiny will be applied."  They maintain that familial rights, the right to associate, and the right of access to the courts are fundamental rights that are at issue in this case.

11

Rule 24.04 of the Tennessee Rules of Civil Procedure states:

> When the validity of a statute of this state or an administrative rule or regulation of this state is drawn in question in any action to which the state or an officer or agency is not a party, the court shall require that notice be given the attorney general, specifying the pertinent statute, rule or regulation.

Therefore, with respect to the Joneses' challenge to the constitutionality of these statutes, the State has responded. It argues that the Joneses lack standing to challenge the statutes and that the statutes are constitutional. First, the State asserts that the Joneses lack standing to challenge Tennessee Code Annotated § 29-18-130(b)(2) because its bond requirement is only for tenants who lose possession for failure to pay rent, which did not occur in the Joneses' case. Furthermore, the State argues that the Joneses probably lack standing to challenge Tennessee Code Annotated § 29-18-129 because they did not pursue the remedy of certiorari and supersedeas. However, the Joneses argue that the State has waived its right to challenge standing because it raised the issue of standing for the first time in its brief.

Notwithstanding its argument that the Joneses lack standing to challenge the constitutionality of these statutes, the State argues that our Supreme Court has held that Tennessee Code Annotated §§ 29-18-128 through -130 do not impose an unreasonable burden on the

12

right of appeal.  In 1992, our Supreme Court held that Tennessee Code Annotated §§ 29-18-128 through -130 did not impose an unreasonable burden on the right of appeal in <u>Newport Housing Authority v. Ballard</u>, 839 S.W.2d 86 (Tenn. 1992).  The court stated the following:

> The appeal bond requirements of T.C.A. § 29-18-128 through § 29-18-130 do not impose any unreasonable or irrational burdens upon parties seeking to appeal an adverse decision from the general sessions court. Moreover, the right to appeal and the concomitant right to a trial by jury is preserved even for those litigants without financial resources.  As this Court has long recognized, if a party "is willing to surrender possession pending the litigation in the higher courts, there is a remedy by appeal which may be obtained on the pauper oath."

<u>Id.</u> at 90. (citation omitted).  We conclude, therefore, that the Joneses' argument on this issue is without merit.

In their fourth and final issue for our consideration, the Joneses assert that Tennessee Code Annotated §§ 29-18-128 through -130 violate the Open Court and Due Process provisions of Article 1, Section 17 of the Tennessee Constitution as well as the Pauper's Oath, under Tennessee Code Annotated § 20-12-127(a), by denying them meaningful access to the Tennessee courts.  Article I, Section 17 states in relevant part:

> That all courts shall be open; and every man, for an injury done him in his lands, goods, person or

13

reputation, shall have remedy by due course of law, and right and justice administered without sale, denial, or delay.

The Joneses contend that "[n]o amount of bond or money can keep a defendant in possession in Tennessee" and that the bond requirement "serves no other purpose than to deter suits by poor persons and families when they have been unjustly evicted." The Joneses argue that they could pay their rent during their appeal, as it became due, into the circuit court, but they could not pay a year's rent in advance. Thus, the appellants contend that their access to the courts and their due process rights have been violated.

As to the Pauper's Oath, under Tennessee Code Annotated § 20-12-127(a), the Joneses contend that "[r]equiring one year's rent from a General Sessions Court Judgment of Possession to appeal de novo to the state court system is a contridiction [sic] of the Pauper's Oath statute," which states that an action may be commenced without giving security. They argue that although they had appealed, a writ of possession was served upon them by the sheriff, and they were required to relinquish possession of the premises.

As with the third issue, the State contends that the appellants lack standing to challenge these statutes.

14

Notwithstanding that issue, the state asserts that the bond requirement is not excessive and that the Joneses could have remained in possession had they chosen the appropriate remedy. Furthermore, it maintains that the Joneses' argument that "[n]o amount of bond or money can keep a defendant in possession in Tennessee" is simply incorrect.

In its brief, the State outlines two remedies that exist for having a detainer judgment heard in the circuit court: by appeal and by certiorari and supersedeas. According to case law, the state maintains that if a defendant pursues an appeal, he cannot keep possession of the premises during the litigation, but the landlord, by giving a bond double the value of one year's rent, can obtain possession immediately. Robinson v. Pennsylvania Mut. Life Ins. Co., 22 Tenn. App. 387, 391, 123 S.W.2d 848, 850 (1938). However, a defendant can retain possession by pursuing the remedy of certiorari and supersedeas and by giving bond to cover costs, damages, and the value of the rent during the litigation in circuit court. Id. Basically, the supersedeas stays the writ of possession, and the writ of certiorari presents the case for review. Nashville Hous. Auth. v. Kinnard, 186 Tenn. 33, 36, 207 S.W.2d 1019, 1020 (1948).

Therefore, the State contends that the writs of certiorari and supersedeas provide for the possibility to retain possession, if

15

the appropriate bond is given.  With respect to the amount of bond required, the State suggests that "the court clerk may have required a bond amount that is quite similar to that in Tenn. Code Ann. § 29-18-130(b)(2) in order to be regarded as sufficient, but the statute governing the circumstance is different and does not expressly require one year's rent or any other specific number."

Furthermore, the State argues that the Joneses have not been denied due process and have not been denied access to the courts. The State notes that the two requirements of due process are notice and an opportunity to be heard and that the Joneses have not been denied these two requirements.  They have not contested notice and were given an opportunity to be heard at every stage of this proceeding: at the general sessions level, at the circuit court level, and at the appellate level.  Furthermore, the State maintains that the Joneses appealed to the Circuit Court and to this Court on a Pauper's Oath, and therefore, have not been prevented from having their day in court.

The State notes that the Pauper's Oath "will obtain an appeal or certiorari of the detainer judgment, but will not stay possession."  However, "the supersedeas may issue upon application in forma pauperis, if an express order of the judge is granted, on notice to the adverse party of the application in forma pauperis, dispensing with security."  See Tenn. Code Ann. § 27-8-113.

16

Although we are inclined to agree with the State that the Joneses' standing to challenge the constitutionality of Tennessee Code Annotated §§ 29-18-128 through -130 is questionable, we will nevertheless address the merits of their argument. As the State ably notes in its brief, the Joneses had the remedy of certiorari and supersedeas available to them, so they could have indeed retained possession of the premises had they chosen that route for review of their case. R&E should not be required to forgo some form of security for the Joneses' continued possession of its property. To do so would be an injustice to R&E. Furthermore, we find no evidence that the Joneses have been denied meaningful access to the courts of this state or have been denied an opportunity to be heard. As the State notes, they have been permitted access to the circuit court and to this Court by the Pauper's Oath. Based on the foregoing, we conclude that this issue is without merit.

We affirm the judgment of the trial court in all respects. Costs of this appeal are taxed to the appellants, and this case is remanded to the trial court.

_____
Don T. McMurray, Judge

17

CONCUR:

_____
Houston M. Goddard, Presiding Judge

_____
Charles D. Susano, Jr., Judge

```
                     IN THE COURT OF APPEALS
                          AT KNOXVILLE


R&E PROPERTIES,                    ) HAMILTON CIRCUIT COURT
                                   ) C.A. No. 03A01-9804-CV-00133
                                   )
   Plaintiff-Counter-Defendant-    )
      Appellee                     )
                                   )
                                   ) HON. ROBERT M. SUMMITT
vs.                                ) JUDGE
                                   )
                                   )
RON JONES and SANDY JONES,         )
                                   )
                                   )
   Defendants-Counter-Plaintiffs-  ) AFFIRMED AND REMANDED
      Appellants                   )
```

## **JUDGMENT**

This appeal came on to be heard upon the record from the Circuit Court of Hamilton County, briefs and argument of counsel. Upon consideration thereof, this Court is of the opinion that there was no reversible error in the trial court.

We affirm the judgment of the trial court in all respects. Costs of this appeal are taxed to the appellants, and this case is remanded to the trial court.


                          PER CURIAM